**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TOTAL PETROCHEMICALS USA,** | § | |
| **INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-10-3213** |
| | § | |
| **TEAM INDUSTRIES, INC.** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiff's Motion to Compel Production of Team's Sales

Contracts with Other Customers (Doc. No. 41).  After considering the Motion, all responses and

additional briefing, and the applicable law, the Court finds that the Motion should be granted in

part.

## I.  BACKGROUND

This case involves a breach of contract dispute over a purchase order between Plaintiff

and Defendant.  Defendant fabricated steel pipe for Plaintiff from 2008 to 2010 after winning a

contract in a bid process organized by Fluor Enterprises, Plaintiff's agent and engineering

contractor.  Plaintiff asserts that Defendant materially breached the purchase order by failing to

comply with its terms.  Defendant has counterclaimed for the outstanding balance due under the

purchase order.

One of Plaintiff's allegations concerns the "most favored nations" provision of the

contract, which provides:

> If, during the term of this Purchase Order, Seller [Team] enters into *similar*
> *arrangements* with any other customer providing greater benefits or more
> favorable terms, this Purchase Order will thereupon be deemed amended to

1

provide the same to Buyer [Total].  Seller will notify Buyer of such amendment within thirty (30) days from such arrangement.

(Second Am. Compl., Ex. 1, Doc. No. 48 at FLUOR-0000065, ¶ 18) (emphasis added.)  Plaintiff sought discovery regarding this provision, and, among other things, asked Defendant to produce all other sales contracts.  Defendant refused, and Plaintiff filed the present Motion.  In response, Defendant asked the Court to limit discovery to contracts (1) made between August 12, 2008 and June 8, 2010; (2) for fabrication of pipe; (3) for fabrication of pipe for the petroleum industry; (4) based on "list and discount" pricing; (5) for fabrication of 5,000 or more pipe spools or $1 million or more in dollar value; and (6) for fabrication of at least some carbon steel. (Resp., Doc. No. 44, at 13–14.)

The Court held a hearing on August 25, 2011, and, without resolving the Motion, preliminarily ordered the production of documents already in the possession of Defendant's counsel.  Portions of approximately 175 contracts were contained in these documents.  After reviewing those documents with the help of their experts, the parties submitted additional briefs about the proposed scope of discovery of any "similar arrangements."  (Doc. Nos. 69, 70.)  Defendant argued that discovery should be limited to contracts (1) of a minimum dollar amount, e.g., $55 million; (2) of a "similar date," such that the MFN clause is applied only prospectively; and (3) based on labor prices set forth in the Fluor Price Book and material prices set forth in the specific manufacturer material price sheets designated by Total, which is how Team was required to bid this job.  (Def.'s Brief, Doc. No. 70, at 3.)  Plaintiff, through its expert, has identified three parameters appropriate in identifying "similar arrangements" to be produced: (1) contracts involving shop fabricated pipe; (2) contracts that include carbon steel, stainless steel, or chrome piping; and (3) limited to the time period of the Total-Team purchase order.  (Pl.'s Brief, Doc. No. 69, at 4.)  Plaintiff identified 39 contracts that fit these parameters.

2

## II.  DEFINING "SIMILAR ARRANGEMENTS"

Defendant urges the Court to find that the most favored nations provision is too indefinite and vague to be enforceable.  Additionally, Defendant argues that this ambiguous term should be construed against Plaintiff as its drafter.  The Court does not find it appropriate to resolve these issues or dispose of Plaintiff's claim in the context of this discovery motion.  Defendant will have the opportunity to re-urge its arguments after discovery is complete.

With this Order, the Court attempts to limit discovery to ensure that the burden of production does not outweigh its benefit, and to identify categories of documents that clearly are too dissimilar to fit the provision at issue.  Although the Court does engage in some analysis of the term "similar arrangements" in order to limit discovery, nothing in this order should be construed as expressing the Court's final opinion on the correct interpretation of this provision. The issue of contract interpretation will be reserved for a later date.

## III. PROPOSED PARAMETERS

Both parties' proposed parameters involve some combination of the following limitations: (1) timing of the contracts, (2) the product at issue in the contract, (3) the type of piping, (4) the pricing method, and (5) the size of the contract.  The Court will examine each of these topics in turn.

### A.  Timing of the Contracts

Defendant's original response stated that only contracts entered into between August 12, 2008 and June 8, 2010 qualified as "similar."  Plaintiff agrees that the MFN clause only covers the "term of the Purchase Order."  At the November 3 hearing, Plaintiff agreed that August was an appropriate date for purposes of discovery.  (Tr., Doc. 78, at 35.)  The Court finds that the

date of Defendant's formal execution of the purchase order, August 12, 2008, is the relevant starting date for purposes of discovery.

Defendant's subsequent brief modifies this parameter.  It states that "[a]ny contract entered into by Team and its other customers after that date should obviously not be applied retroactively.  In other words, if Team entered into a contract with another customer on January 1, 2009, Total should not be permitted to apply the pricing of that contract retroactively to materials purchased by Team, or labor furnished by Team, on the DCP prior to that date." (Def.'s Brief at 9.)  Even assuming that this statement is a correct interpretation of the most favored nations clause, the Court does not see how this parameter is relevant to the discovery dispute at issue.  It does not affect the contracts selected for production, because any contract that Defendants entered into over the term of the Total-Team purchase order could be applied to materials purchased subject to that purchase order after the date of the contract.  Therefore, the Court finds that production should be limited to contracts entered into between August 12, 2008 and June 8, 2010.

### B.  The Product Being Fabricated

Defendant asserted originally that the only relevant contracts were for the fabrication of pipe.  Plaintiff agrees that discovery should be limited to contracts for the fabrication of pipe. The Court finds that this is a proper constraint.

### C.  The Type of Piping Being Fabricated

Defendant argued originally that discovery should include only those contracts that involved at least some fabrication of carbon steel pipe.  However, Plaintiff believes that, rather than limiting discovery to contracts only involving carbon steel pipe, Defendant should be compelled to produce contracts involving chrome and/or stainless steel pipes as well.  Plaintiff's

expert believes that this is appropriate because the Total-Team purchase order included carbon steel, chrome, and stainless steel piping.  Defendant does not object, or identify any new parameters regarding the goods to be produced under the contract.  Therefore, the Court agrees that this parameter should include contracts involving carbon steel, chrome, and/or stainless steel pipe.

### D.  The Pricing Method

Defendant argues that the only relevant contracts are those that involve the exact pricing requirements as the Total-Team purchase order—namely, the Fluor Price Book and the same manufacturers' material price sheets designated by Plaintiff.  Defendant states that it was not allowed to deviate from these pricing sheets when bidding for this project, and therefore "[t]o require Team to offer potentially more favorable terms derived from using a different method of pricing shop labor would be to force Team to breach the Purchase Order."  (Def.'s Brief at 9.) However, as the Court has noted above, discovery is not the appropriate stage of the litigation to address these arguments on the merits.  Once Defendant produces the documents specified in this order, it can argue that, for example, none of the contracts is similar because none of them used the same labor and material price sheets.  However, without discovery, it is impossible for Plaintiff to know whether any of the price sheets used in other contracts are potentially similar enough to trigger the most favored nations agreement.

Additionally, Defendant stated initially that only contracts that involved "list and discount" pricing were relevant, as other types of pricing, such as "lump sum" and "cost plus," are not comparable.  Plaintiff presents deposition testimony from Lacy Collins, Team's Vice-President, who stated that Defendant has a standard way of creating the commercial terms of its contracts so that the ultimate prices Defendant offers do not depend on whether the pricing

5

format is "lump sum" or "list and discount."  (Pl.'s Brief at 4-5.)  Laura Fischer, Team's

Estimator who developed the prices for the Total-Team purchase order, also confirmed that the

ultimate price does not change when Defendant's bid uses a cost-plus format.  Ms. Fischer

identified at least one purchase order that was priced partly in cost-plus format and partly in a

lump-sum format, and she stated that under either format the pricing remained the same.

Defendant argues that it should not be compelled to produce lump sum contracts, as these

contracts cannot easily be compared to a list and discount contract such as the purchase order at

issue.  Plaintiff will not be able to look at the price in a lump sum contract and discern whether it

is better or worse than the discount in the Total-Team purchase order.  (Tr., Aug. 25, 2011, at 7.)

However, Plaintiff also requests the estimating files and proposals[1] for each of the purchase

orders produced in order to see more details about the pricing.  The Court finds that these

documents should be produced so that Plaintiff can determine whether any of these contracts

constitute a "similar arrangement."

**E.  The Size of the Project**

The purchase order at issue in this case was worth over $110 million.  (Becker Decl.,

Doc. No. 45, ¶ 6(d).)  Defendant's original parameters sought to limit discovery to those

agreements "at least somewhat similar in size," including agreements involving 5,000 or more

spools of fabricated pipe or contracts of $1 million or more in value.  Now, Defendant believes

that the relevant contracts are only those of more than $55 million, or at least half of the value of

the Total-Team purchase order.

---

[1] Defendant objected that Plaintiff had never requested these documents before the November 3, 2011 hearing. However, Plaintiff's Requests for Production included "[a]ny Documents or Communications concerning Fluor's status as a 'Most Favored Customer' . . . including . . . Prices You offered to other customers while Fluor was the 'most favored customer.'"  (Plaintiff's First Set of Requests for Production, Doc. No. 46-3, ¶ 28(a).)

Plaintiff argues that size is not relevant.  Defendant enters into contracts with customers that are not dependent on the size of the project, as Defendant has master agreements with some customers that form the basis for multiple purchase orders regardless of the size.  Also, Plaintiff argues that, if anything, a larger size should mean that Defendant would charge *less*, based on the concept of economies of scale.

The Court believes that some restriction on size is necessary.  Defendant's suggestion of a minimum contract value of $55 million would eliminate all of the contracts identified by Plaintiff.  However, the Court agrees that contracts under $1 million are clearly dissimilar to the purchase order at issue, valued at over $110 million.

For any contracts issued pursuant to a master agreement, the parties should consider the total value of all contracts under the same master agreement in determining whether the contract is worth more than $1 million.  Defendant should produce the purchase orders, proposals, and estimating files for each contract that meets the other parameters outlined in this order.

## IV. CONCLUSION

For the reasons explained above, the Court **ORDERS** that Defendant produce the purchase orders, estimating files, and proposals, including all attachments and amendments, for each contract that meets the following criteria:

    a.  Was entered into between August 12, 2008 and June 8, 2010;

    b.  Was for the fabrication of pipe;

    c.  Involves carbon steel, chrome, and/or stainless steel pipe;

    d.  Utilizes any type of pricing model; and

    e.  Is valued at more than $1 million, including the collective value of all contracts under a master agreement.

The Court also **ORDERS** Defendant to confirm in writing that its first production contained all of the purchase orders that meet these criteria.

Defendant must produce these documents within 20 days of this Order.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 29th day of November, 2011.

_____

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**

8